The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. The first case for argument this morning is number 191881, Security Profiling v. Trend Micro. Mr. Milliken, whenever you're ready. Thank you. Good morning, Your Honors, and may it please the Court. Trend Micro's own admissions and the Board's own analysis confirm that the provisional to which the 644 patent claims priority provides written description support for the user option limitation of Claim 1. Trend Micro concedes that the provisional discloses at least two types of user-selectable occurrence mitigation actions, patching and policy selection. And the Board's conclusion that the provisional discloses only automated remediation is, therefore, by Trend Micro's own admission, incorrect. Let me just ask you about that. Leaving aside for a moment this question about automating and not automating, how does the patching or policy selection that you referred to provide a basis for this question of whether user-selected options were firewall-based or IPS-based? Two points in response, Your Honor. First of all, the Board decided that the 644 patent couldn't claim priority to the provisional solely on the basis that the provisional didn't disclose any kind of user option. And so it didn't reach the further question of whether the provisional provides support for a firewall-based or IPS-based occurrence mitigation type. And so we submit that that question should be resolved by the Board on remand, not by this Court in the first instance. However, the provisional does disclose firewall-based and IPS-based occurrence mitigation types. And the reason is the Board construed a firewall-based or an IPS-based occurrence mitigation type to be an occurrence mitigation action that is, quote, performed by an IPS or a firewall. And so it doesn't have to be the type of occurrence mitigation that a firewall or an IPS typically does. It just has to be an occurrence mitigation action that is carried out through a firewall or an IPS. And Trend Micro asked for this construction below, and the Board adopted it. And Trend Micro presumably did so because that fits with Trend Micro's obviousness arguments. Now on appeal, Trend Micro appears to be suggesting that the IPS-based or the firewall-based user option has to be the type of occurrence mitigation action that's typically performed by a firewall or an IPS. But that's simply not consistent with the Board's claim construction, and that's the claim construction that Trend Micro asked for and that Trend Micro got. And there's actually a very good reason to construe the claims in that way. If you look at Dependent Claim 12 of the patent, which is found at Appendix 97, Claim 12 depends from Claim 1. And it recites a first occurrence mitigation action of the firewall-based occurrence mitigation type, including at least one of setting a configuration option, setting a policy, or an installation of a patch. And so this Dependent Claim shows that while a patch isn't, for example, a patch isn't necessarily a firewall-based or an IPS-based occurrence mitigation action, but it can be if it's performed by a firewall or an IPS. And the provisional discloses this sort of occurrence mitigation action. For example, if you look at Appendix 15- Can I just interrupt you for a second because maybe you can help me out here? I'm seeing that argument made in gray, but I guess I'm not really finding it to be an argument that you included in blue. So if I'm missing something, can you just direct me to that argument in your blue brief? Of course. So at page 24 of the blue brief, after Arabic numeral 2, the blue brief states, the program's intelligent IPS, which is an intrusion prevention system, allows the system administrator to use the IPS console to remotely patch targeted vulnerabilities in one click. And so this is an example of an IPS-based occurrence mitigation action. The system is using the IPS's functionality to install a patch after the system has automatically dropped or blocked a problematic connection. And then the blue brief goes on at page 26 after numeral 4. The brief notes that the provisional also describes additional functionality that can be independently provided by a firewall or an IPS. And so the point is, as long as the occurrence mitigation functionality is provided by the firewall or the IPS as opposed to some other aspect of the system, that's enough to make it a firewall or an IPS-based occurrence mitigation type under the board's construction. And I would note in this regard that at page 7 of the red brief, the Trend Micro admits that the provisional discloses this functionality, where the IPS allows the user to install an update or patch after a connection is automatically dropped. And again, under the claim construction that Trend Micro asked for and the board adopted, that's all that is necessary to have an IPS-based user option. And if I could go back for just one moment to the procedural point, which is that the board didn't actually reach this question about whether any user options described in the provisional application are of an IPS-based or a firewall-based type, because the board concluded that the provisional didn't disclose any type of user-selected occurrence mitigation. The board found that the provisional discloses only automated occurrence mitigation, apparently on the basis that the board thought apparently that the two types of occurrence mitigation were mutually exclusive. And that's simply not true. So, Trend Micro admits at pages 7 to 8, 12 to 13, 22 to 23, 28 to 29, and 33 to 34, that the provisional discloses at least some types of user-selected occurrence mitigation, namely patching and policy settings. And so, that in itself is enough to decide this appeal, because the ground on which the board relied to conclude that the 644 patent can't claim priority to the provisional is by Trend Micro's own admission clearly incorrect. And the board's analysis is also, or the board's conclusion on the priority issue is also refuted by its own analysis of the GUPTA reference. The GUPTA reference discloses a response processor that is, in the first instance, configured by a system administrator, and the response processor then automatically responds to specific attacks. The board found at appendix 50 that this is a disclosure of a user option. Well, the provisional discloses in substance the same functionality. The SIS update feature described in the provisional, which is described at appendix 1575 to 1576 and 1579, shows that the administrator uses a management console to set certain policies that, once set, automatically remediate specific vulnerabilities. And so, if GUPTA discloses a user option, then the provisional does, too. And the board's conclusion, otherwise, is internally inconsistent and, therefore, arbitrary and capricious under the APA. Now, I'll say... Can I ask you just as an aside, I'm looking at blue and gray. And with regard to the relief thought, gray says, vacate the board's holding. They're not entitled, I mean, for the proceedings. And then, blue, you ask for reversal, that the board's determination are not challenged to claim priority. What's the difference between the two? No substantive difference was intended, Your Honor. Well, I thought you started by sort of suggesting, in a minimum, you'd require a remand for the board to consider these other issues that we were discussing about five minutes ago. Well, so, I think... I'm sorry, Your Honor, we finished with the question. Please, please, I'm sorry. So, the court would be entitled to decide that the provisional discloses a firewall-based or an IPS-based user option. And that would require a reversal of the board's priority determination in its entirety. However, the request in the blue brief for reversal meant a reversal specifically on the issue of whether the provisional discloses a user option of any kind. So, the court could either reverse the board's conclusion on that narrow issue, vacate the decision, and then leave everything else for the board on remand, including whether the provisional discloses an IPS-based or a firewall-based user option, or the court could go ahead and decide that the provisional does disclose a firewall-based or IPS-based user option, which would necessitate a reversal on the entirety of the priority issue. But regardless, there's going to have to be a remand. Excuse me. This is Judge Stoll. I just have a question, a follow-up question. Is there someplace in your blue brief where you refer to remand anywhere? Well, Your Honor, the remand is going to be, yes, at page 41 of the blue brief. The release thought is that the court reversed the board's determination that the claims are not entitled to claim priority to the provisional and to remand the case for further proceedings. And the reason is no matter how the court resolves the priority issue, remand is going to have to be required because there's a prior invention, a swearing back issue, that the board didn't reach. And so that's something that the board would need to deal with on remand no matter how this case is resolved. Just to clarify this, because this is where I started and I was confused then and I'm not any less confused now. I thought you took the position in your reply brief at least that the board needs to be remanded because the board didn't reach the question of whether or not any user-selected options were firewall-based or IPS-based. Wasn't that the position you took in the reply or did I misunderstand? No, that is correct. The board did not reach that question. And so our point is that because this is an appeal for an agency, it would not be proper for the court to affirm on that issue that the board didn't reach. However, because it has been briefed, the court could decide that issue in our favor, which would mean that the board's priority determination would need to be reversed in its entirety. And so the remand would be to consider the swearing back issue that the board didn't consider because of its determination on the priority issue. So any of my colleagues have anything further? I think I heard that tone. Just Joe? No, I don't have further questions. Okay. All right. Well, why don't we reserve the remainder of your rebuttal and hear from the other side. Thank you, Your Honor. Good morning, Your Honors. This is George Tchaikovsky on behalf of Affiliate Trend Micro. Substantial evidence supports the PTAB's finding that appellant failed to meet its burden to show the provisional provides written description support for the user option element. Appellant's argument on appeal is not much more than an attempt to seek a de novo review, really a do-over, on the false premise that the PTAB ignored appellant's arguments. I'm sorry to interrupt, but this goes to the point we were discussing with your friend. Given the board based its reasoning on the provisional disclosing only the automatically performed actions, why would we not have to vacate and remand for the board to consider that issue without that misconception? And that's the issue we were discussing earlier about the fireball-based or IPS-based options. Right. Well, I would phrase this, Your Honor, as a misconception here. And really, their argument, the appellant's argument, misstates the PTAB's findings. As it relates to the invention and the provisional disclosure of the invention, the PTAB found, again, as Your Honor pointed out with respect to the user-selectable options, that those user-selectable options were all automated. And nothing is incorrect about those findings. The PTAB found that the functions as he identified and argued at the PTAB and in the blue brief as comprising the user option are automated and fail to satisfy the user option element. That's clear from A14- I'm sorry to interrupt. Could you keep your voice a little lower? I'm getting an echo because you're speaking too loudly, which is not your fault. It's just the nature of this conversation. I'm sorry. I apologize, Your Honor. That's A14-16. If you look at that, it's an important distinction. And it's a reflection of what the parties argued and what the evidence before the PTAB showed. And so while as we reflected in our brief, there may be user options. And in some ways, I would say that both those patching policy options are obtuse with respect to what they even disclosed with respect to the patch and the fact that there can be some deployment of it. There's no description in the provisional as to how it's deployed. And then there's a description of a policy that's set at the outset as we set policies for the federal circuit, for example, as to who has access to what. That's not a user selectable mitigation action using diverse mitigation types. And when then the PTAB finds on A20 that they find that there is no user option description for limitation 1G, it's kind of a red herring when we say we need not address whether the firewall and intrusion protection options of limitation 1G are described because they found the genus has not been disclosed, the user selectable options for any type of mitigation actions are not disclosed. And yet at that point, there of course cannot be firewall or IPS user selectable options because there is no type. Everything in the provisional application that is described, and we can go through the citations of the provisional application, is the invention itself. The SysUpdate invention is automated. And the fact that within the prior art, within the knowledge of one of skills, there could be knowledge that certain things could be done with user involvement doesn't address whether it is part of the claimed invention. So at best, even if the PTAB could be faulted for finding that every function in the provisional wasn't even automatic and those findings may, even if they were incorrect, the error would be harmless because the function SP now argues on appeal, one, weren't adequately developed and argued to the PTAB, first of all, as the record shows and as we briefed. And two, regardless, the PTAB's finding is still correct because of those passion policy functions do not comprise the language of the claim code for providing a user with one or more options to selectively utilize different occurrence mitigation actions of diverse mitigation types. And that's clear from the order. To the extent there is any technical inaccuracy, as I argued, I don't think there is one, it's harmless error. And cases such as event versus alarm, 741FX, 786, 792, would tell us that it's of no import because it doesn't relate to the claimed invention. The fact that there are these items which may be user-selectable, sorry, excuse me, user-driven, may be user-driven in some way, which is not clear, concise, and described in the way the area requires from a 112 perspective that the inventor was in possession of the invention at the time of filing of the provisional. And that's exactly the point of the PTAB. That's very different than what is required, I can answer, you know, as it relates to GUPTA, as we heard about GUPTA from the applicant. Let me ask you to keep your voice at a lower decibel level of your voice, please. Okay. Apologies, Your Honor. But it's very different than what comes through in the GUPTA disclosure, and the context in which the PTAB is analyzing that, where that was a 103 analysis versus a 112 analysis. And we're analyzing things under, you know, KSR, and whether something could be obvious to one of ordinary skill. And again, in the same way that we kind of have a misrepresentation of really the findings of the PTAB with respect to its ultimate determination on written description from A14 through A17, the findings on A50 as it relates to GUPTA are taken out of context. Where the primary driver for the PTAB with respect to GUPTA was that the GUI interface, or VIZ, discloses the user option element. It is only after doing so, if you look at A50, that the Nielsen Declaration was pointed to, and it was pointed to that GUPTA provides user options by signing to paragraph 191. If we look at paragraph 191 of the Nielsen Declaration, we will see that in that paragraph, that is just an obvious miscombination of GUPTA and GERARD. It is not the response processor or a citation to the response processor in and of itself. That is a misstatement by the appellant, and that is on A34, Your Honors. And it was really this teaching coupled with GERARD's firewall rendered the claim obvious. It is only next sentence of A50 that they said the testimony in part of Dr. Nielsen's teaching of the response processor supports their arguments. This doesn't say it equates with the user option. It is the user option. Again, that is a creation of appellant with respect to that paragraph on 191, and so there was no equating there. There is no arbitrary and capricious nature. We are doing this in the context of 103. We are doing this in the context of obviousness. We are doing this in the context of GUPTA in combination with GERARD and what it can disclose. In fact, the first point they highlight are not even from Dr. Nielsen's declaration, and that is very, again, different. I think what is forgotten in both of these arguments that Your Honors asked me about with respect to is their burden of production, which they have let go both at the PTAP and in the blue brief and then an effort to reconcoct in their reply brief, the precise, concise description that AREAD requires of being in possession of the invention, as opposed to what effectively comes down to perhaps some enablement or obviousness standard with respect to written description, which we all know is not the standard with respect to whether one has a possession of the invention. With respect to the claims as they exist, which I think are very clear that we have this user-selectable option where there are two types of species the claim requires no matter what, a firewall species and an intrusive prevention system species in IPS, and that is even with the board's constructions. I understand the argument being made with the board's constructions. Even when I put in the board's constructions as I have in front of here, it's still clear what the board meant. And by the way, when you look at the board's order throughout, that they required those two. And by the way, that's the argument the appellant made throughout the PTAP proceeding. It's only here now on appeal we see different arguments about passion policy. Moreover, what was mentioned by appellant was this footnote, foot 14, which I find very interesting. That's on A15, note 14 of the PTAP order. That's deadly, actually, because there actually was a finding in there by the appellant, by the PTAP. The PTAP analyzed the evidence of these prior declarations in contradistinction to what appellant stated. And they analyzed these declarations submitted by security profiling relating to swearing behind the prior art. And they found that the inventor declarations do not include facts, there's a quote, do not include facts supporting that a user option was present in the alleged prior activities of the inventor. So they considered both inventor's declarations and an A15 footnote 14, just to make sure you have it, and so even in a world where they wouldn't be entitled to the priority date of the provisional, this board looking at the evidence to try to swear behind the art, which is still at best required even if they're allowed to, given AIA rules, et cetera, at best is saying you still wouldn't have made it. So what are we talking about? So beyond the fact that the provisional doesn't describe it, beyond the fact that the 852 patent, which under 35 U.S.C. 119 is the first application from the provisional, drops almost all of the disclosure of the provisional, as the board notes. And therefore, how do we get to add it back? You only get to add it back as a CIP, so you get the CIP's date, because we need 112 continuation, continuation and then specific identification of the application. That 852 cuts it off. We don't get to add provisional material at any time within an application willy-nilly. And that's why the board analyzed the 852. That had cut it off. And so it's at that point, the board looking at it said it's not in the provisional, it's not in the 852, it's at best only in the application that issues the patent, the 237. Moreover, looking at 815, note 14, you guys can't even get there with your own declarations. So I suggest to you that the board looked at everything. They analyzed the policy and patched analysis, and it's very clear they looked at those. And as we look at 814 through 817, they even looked at the Feinster Declaration and quoted it, and said it supports the opposite conclusion. That at best when it comes to the user selectable, it's user selectable in the sense of, you know, an administrator selecting not in the context of the patch or policy, you know, mitigation techniques. And then we see that. So I think I've responded, Your Honors, to everything you have, unless you have questions. May I interrupt, please? Yes. It's very hard to get a word in edgewise with you, Mr. Tchaikovsky. We've come a million miles away from Mr. Milliken's core argument, so I want you to come back and just in a nutshell, so I can remember it, tell me what your response was. The position of Mr. Milliken is that the board issued a ruling that said in the provisional, all of the intervention actions are automatic. There's no user option at all. And Mr. Milliken says that you've admitted that both patching and policy setting are user options and that those are both disclosed in the provisional. And Mr. Milliken makes a very straightforward argument and says, how can we affirm a board decision that says there are no user option interventions disclosed in the provisional, when you have admitted that there are two? You referred to this argument very briefly at the beginning, and then you took off at a breakneck speed to just avoid that argument. Can you come back and in a nutshell tell me why Mr. Milliken's argument doesn't have merit? Yes, Your Honor. I apologize. I'll try to be slower. One, it's inaccurate to say that we've admitted that any of these are user options. Forget whether you've admitted it. It's clear that both patching and policy setting are disclosed in the provisional, correct? Yes or no? There are patches and policy in the provisional. Don't give me a motor argument. Yes or no? Are they disclosed, those two things? Yes. Are they user options, yes or no? No. Why not? Because the board is using the term user option in quotes to connote the initial language of Element 1G, as they called it, code for providing a user with one or more options to selectively utilize different occurrence mitigation actions of diverse occurrence mitigation types. And nowhere within the provisional is there a disclosure that the user is allowed to pick different mitigation actions of diverse mitigation types with respect to either the patch or policy. And that cannot be pointed to by the applicant or by the petitioner here that is security profiling that that can be done. Again, at best they can disclose that there are the patch and policy, but there is no disclosure. And if you want me to go into particulars on the policy and patch, Your Honor, I can go into particulars as to how those do not disclose the user selectable options in the record. You know, again, the disclosure with respect to policies only says, again, and this is at their brief, that is their brief at 20, the provisional allows the network. Mr. Tchaikovsky, again, you're going on. You're eating up the Director's time. I just wanted to raise this because I thought in fairness to Mr. Milken, he probably wants to come back and greet this point in his rebuttal. And your argument got oceans away from this, and I thought that's why I wanted to come back to it. So thank you for your explanation. I apologize, Your Honor. And if I've used all my time, I guess I am complete? Yes. Okay. Ms. Rasheed, you have two minutes, and I guess you're going to tell us that preservation wasn't sufficient because the argument only appeared in the reply brief. Is that correct? That's correct, Your Honor. That was the reason for our intervention. I know the issue didn't come up this morning. As you just stated, I'm happy to answer any questions on that if the Court has any. We pretty much resolved that question in our opinion in custom media. That's correct. In many cases after that, there's no reason to depart from that precedent in just enforcing ordinary forfeiture rules. Thank you. Thank you. Okay. Mr. Milliken, we'll hear you on rebuttal. Thank you, Your Honor. In my rebuttal time, I'd just like to emphasize that we argued below that the provisional discloses patches and policy selection. This is at Appendix 415 to 416, which is in our patent owner response. The Board rejected that argument. They said no. The provisional discloses only automated user options. Trend Micro admitted in their brief, and my friend has admitted again in his argument, that the provisional does, in fact, disclose at least patching and policy selection. What's confusing me, the question is, the claim we're talking about talks about specific types of mitigation options that need to be made available to the user, i.e., fire-based type, firewall-based type, and IPS-based type. And so, given what you said, it does not answer the question, right? It does, Your Honor. So, again, I would make the procedural point that at Appendix 20, the Board expressly declined to reach this issue of whether the user options in the provisional were of the right type because the Board said there's no user option at all. However, if this court were to reach that question in the first instance, my argument still applies because the patching, I see my time has expired. May I finish my answer? Of course, yes. The patching and the policy selection that are described in the provisional can be provided using firewall or IPS functionality. This can be seen, for example, at Appendix 1581. And under the Board's claim construction... And on the other side, in red, I think it's pages 27 to 34, I think they make a fulsome argument on the other side of that, which is a different conclusion, that they are different, right? So you're saying it's up for us, that we at the appellate level can and should or at least are able to resolve that as between the two arguments made in our briefing, right? We would be able to resolve it in favor of the provisional disclosing the required types of user options, but I respectfully submit that it would be improper for the court to affirm on that issue because that is an issue that the Board expressly declines to reach, and so that would be inappropriate under the Chenery Doctrine. Okay. All right. Thank you. Thank you, Your Honor. Time is up. We thank all parties and the case is submitted.